**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHAD ROARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 10 C 7220 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| LAGRANGE SCHOOL ) | |
| DISTRICT 105, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff has sued defendant for its alleged violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Illinois School Code, 105 Ill. Comp. Stat. 5/10-22.4. Defendant has filed a Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment. For the reasons set forth below, the Court grants in part and denies in part the motion.

**Facts**

In 2006, defendant hired plaintiff to teach seventh grade science at Gurrie Middle School, and later renewed his contract for the 2007-08 and 2008-09 school years. (Pl.'s LR 56.1(b)(3)(B) Stmt., Facts Supporting Summ. J. ¶¶ 1, 4-5); *see* 105 Ill. Comp. Stat. 5/24-11 (stating that teachers hired after 1988 are subject to a four-year probationary term). At the start of the 2008-09 school year, Gurrie Principal Ed Hood told plaintiff that Barbara Baldassarre, the mother of one of plaintiff's students, had complained about plaintiff's use of the science text book. (Pl.'s LR

56.1(b)(3)(B) Stmt. ¶ 6.) Hood asked plaintiff to discuss the issue with Baldassarre, and plaintiff did. (*Id.* ¶¶ 7-8.)

On October 30, 2008, Baldassarre asked plaintiff for feedback on one of her son's assignments and to explain the weight plaintiff assigned to various projects. (*Id.* ¶ 10.) Plaintiff emailed a response the same day, but Baldassarre did not receive it. (*Id.* ¶ 11.)

On November 4, 2008, after learning that his response had gone astray, plaintiff emailed it to Baldassarre again. (*Id.* ¶ 12.)

On November 6, 2008, Baldassarre sent an email to Hood confirming that plaintiff had responded to her October 30, 2008 email and stating that her "frustration and concern continues with regard to some of the course content, expectations and communication." (*Id.* ¶ 13; *see* Def.'s Ex. 8, Email from Baldassarre to Hood (Nov. 6, 2008).)

In early February 2009, plaintiff had a parent-teacher conference with Baldassarre, during which she complained abut the science curriculum, the length of time it took plaintiff to grade homework and a lab project that her son had done in class. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 16.) During the conference, plaintiff told Baldassarre that she "had been out to get him since day one." (*Id.* ¶ 17.)

On February 27, 2009, after various meetings with Baldassarre, Hood and plaintiff, Superintendent Glenn Schlicting instructed plaintiff to address Baldassarre's concerns by: (1) developing grading rubrics for new units and labs; (2) grading and returning homework within three days and projects/labs within two weeks; and (3) providing extended work packets to high-skill students. (*Id.* ¶¶ 18-20, 22-23, 25; *see* Def.'s Ex. 12, Email from Schlicting to Pl. (Feb. 27, 2009).)

On March 4, 2009, Schlicting emailed plaintiff: "When will your new unit begin?" (*See* Def.'s Ex. 13, Email from Schlicting to Pl. (Mar. 4, 2009).) Plaintiff says he responded to the email by giving Schlicting a copy of the rubric he had prepared and telling Schlicting about the status of the other tasks. (Pl.'s Aff. ¶ 23.)

On March 17, 2009, Schlicting emailed plaintiff: "Would you give me an update of where you are at with the rubric/extension project for your upcoming unit? (*See* Def.'s Ex. 14, Email from Schlicting to Pl. (Mar. 17, 2009).) The same day, plaintiff left school early to see a doctor because he could not focus and was having anxiety. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 28.)

Sometime thereafter, Hood and Mandy Hansen, plaintiff's teaching team leader, found what they believed were weeks' worth of ungraded papers in plaintiff's classroom. (*Id.* ¶ 33.)

On March 20, 2009, Hood sent plaintiff a letter telling him he could take FMLA leave and asking him to tell Hood by March 25, 2009 whether he would return to teaching after spring break. (Def.'s Ex. 15, Letter from Hood to Pl. (Mar. 20, 2009).)

On March 26, 2009, Schlicting sent plaintiff a letter "to follow up on [his] concerns abut [plaintiff's] recent patterns of behavior." (Def.'s Ex. 16, Letter from Schlicting to Pl. (Mar. 26, 2009).) It said:

> You have not provided the district with sufficient information related to your recent absences. You did not leave adequate substitute plans for your absences on March 16th, 18th, 19th, or 20th. You also left the building in the afternoon on Tuesday, March 17th without notifying a school or district administrator.
>
> You also have not responded appropriately to our efforts to communicate with you. You called Ed Hood twice, only after he left several phone and email messages and sent you a letter. In the two conversations you did have with Ed Hood on Thursday, March 19th and Wednesday, March 25th, you were noncommittal about your intentions to return to work and your ability to meet the demands of your job as a seventh grade science teacher. You have not responded to my email dated March 17th asking for an update about the progress you made developing a rubric and

3

> extension packet for your upcoming science unit. We both agreed about the importance of providing me with this information in a timely manner.
>
> We are concerned about your well being and your willingness and ability to meet the needs of the seventh grade students. As [sic] condition of your return to work, I am requiring that you provide us with a physician's statement that you are fit to perform your duties as a classroom teacher without any restrictions. . . .

(*Id.*) Apparently, the same day, plaintiff told Schlicting that he would not be able to return to work on Monday, March 30, 2009. (*See* Def.'s Ex. 17, Email from Schlicting to Pl. (Mar. 27, 2009).)

On March 27, 2009, Schlicting told plaintiff in an email that "Ed Hood and the district need information from your doctor about the length of your absence so that we can plan to meet the students' needs. Please get something in writing from your doctor and send it to me by the end of the day Monday – again, so we can plan accordingly." (*Id.*)

On March 30, 2009, Schlicting told plaintiff in an email that he was going to recommend at the School Board meeting that night that plaintiff's contract not be renewed for the next school year. (Def.'s Ex. 18, Email from Schlicting to Pl. (Mar. 30, 2009).) The Board followed Schlicting's recommendation and terminated plaintiff. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 41.)

On March 31, 2009, plaintiff formally requested, and defendant gave him, FMLA leave. (*Id.* ¶ 42.)

## Discussion

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and

draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I, plaintiff alleges that defendant interfered with his FMLA rights. To defeat defendant's motion on this claim, plaintiff must offer facts that suggest he was eligible for and entitled to FMLA leave, he gave defendant sufficient notice of his intention to take it and defendant denied him FMLA benefits to which he was entitled. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 590 (7th Cir. 2008). The only element at issue here is the last one, whether the record suggests that defendant denied plaintiff the benefit of returning to his job. (Def.'s Mem. Law Supp. Mot. Summ. J. 4); *see* 29 U.S.C. § 2614(a)(1), (3) (stating that an employer must restore an employee to the job he had when his leave began unless he would not have been entitled to the job even if he had not taken leave).

Viewed favorably to plaintiff, the record shows that he was terminated after he told defendant he intended to take FMLA leave. (*See* Pl.'s Aff. ¶¶ 30, 40 (stating that he left work ill on March 17, 2009 and told Hood on March 19, 2009 that he needed to take FMLA leave)); Def.'s Ex. 23, Hood Dep. 49-50 (testifying that he and plaintiff discussed FMLA leave on March 19, and 25, 2009); (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 41 (admitting that plaintiff was terminated on March 30, 2009).) Thus, the burden shifts to defendant "[to] present evidence . . . that [plaintiff] would not have been entitled to [his] position even if [he] had not taken leave." *Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). If defendant does so, plaintiff "must then overcome [defendant's] assertion," by showing that defendant would not have fired him if he had not taken leave. *Id.* at 804-05.

Defendant contends that plaintiff would have been terminated even if he had not taken leave because of: (1) his comment to Baldassarre during the February 2009 parent-teacher conference; (2) his failure to execute the remedial steps outlined by Schlicting on February 25, 2009; (3) the apparent cache of ungraded work found in his classroom when he went on leave; and (4) his failure to provide adequate substitute teacher plans for March 16, and 18-20, 2009. (*See* Pl.'s LR 56.1(b)(3)(B) ¶¶ 6-25.) The record does not, however, reflect the reasons for which defendant generally terminates probationary teachers. Thus, it does not support the inference that a single inappropriate comment or parental complaint are among them. Similarly, there are no facts that suggest plaintiff was required to, or even could have, completed the February 27, 2009 tasks before he went on leave on March 17, 2009. Thus, there is no basis for inferring that plaintiff should have completed them by that date. Finally, there is conflicting evidence as to whether there was any ungraded work in plaintiff's classroom or adequate substitute plans, disputes that the Court must resolve in plaintiff's favor. Taken together, these evidentiary gaps and the proximity between plaintiff's leave and his termination are sufficient to create a genuine issue of fact as to whether defendant interfered with plaintiff's FMLA rights.

In Count II, plaintiff alleges an FMLA retaliation claim. To defeat defendant's motion on this claim, plaintiff must offer evidence that suggests defendant terminated him because he took FMLA leave, not for the reasons defendant asserts. *See Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009).[1] Viewed favorably to plaintiff, the record supports an inference of retaliation. As noted above, there are no facts suggesting that plaintiff was required or able to complete the tasks he was

---

[1]This so-called direct method of proof is the only one plaintiff uses. *See Smith*, 560 F.3d at 702 (stating that "[t]he indirect method, familiar from Title VII cases," can also be used in FMLA retaliation cases).

assigned on February 27, 2009 before he went on leave, or that his failure to do so and/or his improper comment to Baldassarre are the kind of conduct for which defendant normally terminates probationary teachers. Further, the record suggests that these were the only problems plaintiff had while at Gurrie and that his teaching skills were generally held in high regard. (*See* Pl.'s Ex. 6, Non-Tenured Teacher Observation Form (Oct. 10, 2008) (showing that plaintiff received the highest possible rating); Pl.'s Ex. 2, Gurrie Middle School Goal Setting Form (stating on February 20, 2009 that plaintiff was "making good progress towards his [2008-09] goals"); (Def.'s Ex. 26, Hansen Dep. 56 (testimony of plaintiff's teaching team leader that he is "a good teacher"); Def.'s Ex. 25, Kulaga Dep. 59-61 (testimony of Gurrie's eighth grade science teacher and plaintiff's science teaching partner, that plaintiff is an "outstanding" teacher and a "great science partner" and had been nominated for a Golden Apple Award); Def.'s Ex. 23, Hood Dep. 5 (testifying that plaintiff "had good experience and . . . was good with kids, was "a very good teacher" and "did a very solid job for me and our kids")); *see* http://www.goldenapple.org/pages/about_us/6.php (stating that "Golden Apple is a non-profit organization that works to inspire, develop and support teacher excellence in Illinois" and "annually bestow[s] Golden Apple Awards for Excellence in Teaching [to] celebrate outstanding teachers"). Further, plaintiff says he prepared the rubric as Schlicting directed and otherwise kept Schlicting updated on his progress in completing the other assigned tasks. (Pl.'s Aff. ¶ 23.) Plaintiff also asserts that his grading was up-to-date, he provided adequate substitute teacher plans for March 16, and 18-20, 2009 and was in contact with the administration while on leave. (*Id.* ¶¶ 26, 29, 35-41; Pl.'s Ex. 7, Pl.'s Phone Records March-April 2009); *see* http://gurrie.d105.net (showing Gurrie's phone number as 708-482-2720). This evidence, coupled with the fact that

7

defendant terminated plaintiff two weeks after he requested FMLA leave and the same day it granted his request, is sufficient to raise a genuine issue for trial as to plaintiff's retaliation claim.

In Counts IV and V, plaintiff alleges that defendant violated his rights under the ADA by terminating him on the basis of a perceived disability and subjecting him to impermissible medical testing. The ADA protects qualified individuals with disabilities from workplace discrimination. *See* 42 U.S.C. § 12112(a). As relevant here, a qualified individual with a disability is one who has or is regarded as having a mental impairment that substantially limits the major life activity of working but can still perform the essential functions of his job without or without a reasonable accommodation. *Id.* § 12102(1)-(4); 29 C.F.R. § 1630.2(m). Viewed favorably to plaintiff, the record does not suggest that he was a qualified individual with a disability when he was terminated. Rather, it suggests that he had a mental impairment of indefinite duration that rendered him unable to perform the essential functions of his teaching job with or without a reasonable accommodation. (*See* Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 28-29, 31, 36-38, 43.) Because there is no evidence to suggest that plaintiff was a qualified individual with a disability when he was terminated, he is not entitled to the ADA's protection.

The result is the same for plaintiff's Count III claim for violation of the Illinois School Code. Section 5/10-22.4 of that statute prohibits defendant from terminating a teacher because of a "[t]emporary mental or physical incapacity to perform teaching duties, as found by medical examination." 105 Ill. Comp. Stat. 5/10-22.4. Because there is no evidence that suggests plaintiff's impairment was, or defendant knew it to be, temporary, or that plaintiff gave defendant medical documentation to that effect, he has not raised a triable issue of fact on this claim. *See deOliveria v. State Bd. of Educ.*, 511 N.E.2d 172, 180-81 (Ill. App. Ct. 1987) (holding that a doctor's note

saying plaintiff "is under active medical treatment" and asking for "'leave of absence' until further notice" was not poof of a temporary incapacity within the meaning of the School Code because "it contained nothing of a substantive nature to evidence a medical examination which conclusively established plaintiff's temporary mental incapacity to perform her teaching duties").

**Conclusion**

For the reasons set forth above, the Court finds that there is no genuine issue of material fact as to whether defendant violated plaintiff's rights under the ADA (Counts IV and V) or the Illinois School Code (Count III) and defendant is entitled to judgment as a matter of law in these claims. Therefore, the Court grants defendant's motion for summary judgment [26] as to Counts III-V and denies it as to the FMLA claims in Counts I and II. At the next status hearing, the Court will set dates for submitting the final pretrial order and for trial on the FMLA claims.

**SO ORDERED.**                              **ENTERED: March 30, 2012**

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**